## TURNER *v.* STATE.

(Division A.  Dec. 14, 1936.)

[171 So. 21.  No. 32554.]

**J. W. P. Boggan**, of Tupelo, for appellant.

**Webb M. Mize,** Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

Appellant was indicted, tried, and convicted of the crime of robbery by the exhibition of a deadly weapon, and the jury failing to fix the punishment at death, the court, thereupon, sentenced him to serve twenty years in the penitentiary.

The indictment was substantially in the language of the statute on the subject, chapter 328, page 657, Laws of 1932, reading, in part, as follows: "Every person who shall feloniously take or attempt to take from the person *or* from the presence the personal property of another and against his will by violence . . . shall be guilty of robbery and, upon conviction, shall be punished by death," etc. It will be noted that the two

phrases of this statute are connected disjunctively by the word "or."

We do not deem it necessary to set out in detail the facts. Suffice it to say that the indictment charged appellant with taking money in the presence of, and from the persons of, R. C. Brasfield, Ernest Weeks, and Joe Turner. It was shown by the evidence that these persons, together with appellant, were engaged in a game of poker, using the top of a trunk for a table; that appellant arose as if to go out, and then turned to where the money used in the game and other money was lying, pulled a gun from his pocket, and informed the others that he was going to get his money, telling his brother, Joe Turner, to count it out. Joe Turner refused to do this, and thereupon, the appellant, with his left hand, took all the money on the trunk, that which had been put into the game, and that which the players had on the side. Appellant threatened Weeks and Brasfield, the former when he had his hand in appellant's pocket, and the latter when he attempted to take two dollars claimed as his, and appellant also threatened Mrs. Brasfield in the same manner, and appellant then backed out of the room, got in his car and drove away.

Brasfield testified that he had two one dollar bills which he had won, and three dollars and fifty cents in change, and that he lost that by the robbery.

Weeks testified that Elihu Turner took all of his money, including that he had won, and Brasfield testified to the same effect.

Those engaged in the game who claimed to have been robbed were corroborated by Mrs. Brasfield and her twelve year old son.

The appellant testified that he had lost twelve dollars and fifty cents in the game, and that he only took nine dollars from the top of the trunk.

It is undisputed that there was some small change, less than a dollar, on the trunk after appellant had gone.

Appellant further testified that the pistol was on the trunk, and that while he picked it up, he did not exhibit it, or point it at any one, and that he saw some extra cards in the deck, which testimony was corroborated by his brother, Joe Turner. Appellant further testified that he took the money from the top of the trunk, and not off the persons of the parties; that he took three drinks of whisky, "and that was a plenty," and that some of the cards were marked, all of which was corroborated by another witness. The appellant admitted that he had been convicted for gaming, having in his possession whisky, stealing chickens, and having a "chicken friz," but stated that he had paid for all of it.

Other witnesses testified as to the character and general reputation for truth and veracity of appellant, Weeks and Brasfield, stating that it was bad.

Appellant contends that it was error for the court below to overrule his motion for a continuance because of the temporary absence of the witness, Osser. Appellant, however, offered no evidence in support of his motion. The state offered the father of Osser, who testified, in effect, that the witness, Osser, had permanently moved out of the jurisdiction of the court to New Orleans. There was no motion for a new trial.

Under these circumstances, no error can be predicated, as we do not think there was any abuse of the sound discretion of the court in overruling the motion for a continuance.

At the conclusion of all the evidence, the appellant requested a peremptory instruction, which was refused by the court, and this is assigned as error on several grounds:

Appellant says that the indictment charged him with taking money from the person, and in the presence of, Joe Turner, Ernest Weeks, and R. C. Brasfield, and that the evidence shows that the money was not taken from the persons of these parties.

Appellant contends that it devolves upon the state to prove that the money was taken from the person as well as in the presence of these parties. This question has been disposed of by this court in the case of Brady v. State, 128 Miss. 575, 91 So. 277, 278. There the indictment charged both crimes, violence to the person, and putting him in fear of some immediate injury to his person, conjunctively by the use of the word "and." The court there said, quoting from Bishop's Crim. Proc., vol. 1, sec. 436, that, "A statute often makes punishable the doing of one thing, or another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction, a person who in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction 'and' where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them." See, also, Jimerson v. State, 93 Miss. 685, 46 So. 948.

Appellant further says that the peremptory instruction should have been granted, because the evidence does not show an intent to steal. He alleges that the proof is undisputed that he took only his own money which he had lost in an unlawful game of chance.

Evidence for the state showed that appellant not only took the money which had been won in the game, but took the witnesses' original money which they had before they went into the game, especially the two one dollar bills from Brasfield.

This, at best, created a conflict on the question as to whether he took his own property, or that of the state witnesses, as well, as testified to by them.

Summing up the state's evidence, it shows that the appellant did not lose as much money as he claimed, if

his brother, Joe Turner, and the state witnesses, are to be believed. The jury did so believe, and found against the appellant on that issue.

Appellant's contention is that the money he lost in the game, even though taken by force, was taken without an intent to steal, for one cannot steal his own property.

The evidence for the state is against this proposition, and we are not called upon to decide whether or not, in a game of chance, an alleged robber, taking only money he had lost in such unlawful game, would be guilty of robbery. The weight of authority is that, under such circumstances, the crime would be trespass and not robbery. See State of Idaho v. Paul Price, 38 Idaho, 149, 219 P. 1049, 35 A. L. R. 1458, and annotations thereto.

However, the court below granted an instruction to the appellant to the effect that money obtained by gambling between the winner and the loser was unlawful, and that the loser may use force against a person who unlawfully attempts to take his property.

In the case at bar, the jury was authorized to find, from the evidence, that the appellant feloniously took more money than he lost in the game, and in view of all the evidence, they were not bound to accept the version of the appellant that he lost twelve dollars and fifty cents.

We find no reversible error in this case.

Affirmed.