STATE, APPELLANT, *v.* HAYES, RESPONDENT.

[Argued January 25, 1893.    Decided February 27, 1893.]

CRIMINAL LAW — *Larceny by bailee of horse — When not punishable as grand larceny
— Statutory construction.* — The bailee of a horse, who converts it with intent
to steal, and is tried and convicted under section 93 of the Criminal Laws, pro-
viding that if any bailee of property convert the same to his own use with in-
tent to steal, he shall be guilty of grand or petit larceny according to the amount
or value of the property converted, can not be punished for grand larceny where
the value of the horse as alleged is less than fifty dollars, although section 78
of the Criminal Laws makes the stealing of a horse of whatever value grand
larceny.   Said statutes being highly penal the rule of strict construction ap-
plies, and, in the absence of any qualifying words in section 93 as "nature" or
"character" of property, so as to make the offense and punishment the same
under both sections, said section 93 is susceptible of no construction under which
the defendant could be convicted.

*Appeal from Sixth Judicial District, Park County.*

Conviction for grand larceny.   Defendant's motion in arrest
of judgment was sustained by HENRY, J.   Affirmed.

*Henri J. Haskell,* Attorney General, and *Allen R. Joy,* for
the State, Appellant.

*Matthew R. Wilson,* for Respondent.

PEMBERTON, C. J. — On the twelfth day of November, 1892,
the county attorney of Park County filed in the court below the
following information against the respondent, omitting the cap-
tion and formal parts: "In the name and by the authority of
the State of Montana, I, Allen R. Joy, county attorney in and
for the county of Park, in the State of Montana, who prose-
cutes for and on behalf of said state, upon information, in the
district court of said district, *sitting in and for the said county*

of Park, and duly empowered to inform of offenses committed within said county, come now here upon information, and give the court to understand and to be informed that one John Hayes, late of said county of Park, aforesaid, at the county of Park, in the state of Montana, and within the jurisdiction of this court, on or about the twelfth day of August, A. D. 1892, then and there being a bailee of property, to wit, one roan mare, of the value of forty dollars, a more particular description of which is to the said county attorney unknown, of the property of one W. F. Kirby, and then and there feloniously converted the same to his own use, and did then and there feloniously sell and dispose of the said roan mare with the intent to steal the same, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Montana." The respondent pleaded not guilty. On this issue the cause was tried by a jury. The jury convicted the respondent, and fixed his punishment at imprisonment in the state prison for a term of one year. After conviction, counsel for respondent filed in the lower court the following motion in arrest of judgment: "(1) Because the information in this action does not state facts sufficient to constitute any offense against the laws of Montana. (2) Because the court had no jurisdiction, for the reason that the property alleged to have been converted by the defendant was stated to be of the value of forty dollars, and the offense, if any, charged in the information, was that of petit larceny." The lower court sustained the motion, and, from the order and judgment sustaining the same, this appeal is prosecuted.

This prosecution was instituted and conducted under section 93, chapter 6, division 5, of the Compiled Laws, and is as folfollows: "If any bailee of any money, goods, or property shall convert the same to his own use, with intent to steal the same, he shall be guilty of grand or petit larceny, according to the amount of the property or value of the goods, chattels, or property so converted, in the same manner as if the original taking had been felonious; and, on conviction thereof, shall be punished accordingly." The appellant claims that, under the foregoing statute, the respondent could be tried, convicted, and punished as under section 78 of the same chapter, which makes

the stealing of any mare, gelding, colt, etc., grand larceny, without reference to the value of such animal, if it be of any value whatever. It is conceded that the felonious stealing of any of the animals, of whatever value, mentioned in said section 78, is made grand larceny. Section 93, chapter 6, division 4, of the Compiled Laws, provides that if any bailee of any money, goods, or property shall convert the same to his own use, with intent to steal the same, he shall be guilty of grand or petit larceny, according to the amount of the money or value of the goods, chattels, or property so converted, in the same manner as if the original taking had been felonious, and shall be punished accordingly It will be noticed that in said section 93 no mention is made of the nature of the property converted, as entering into the degree of larceny, of which the party may be convicted, or determining the punishment that may be imposed. The amount of the money, or the value of the property converted, is the criterion by which the degree of the larceny is to be determined, as well as the penalty to be imposed. In the theft of the animals mentioned in section 78, chapter 6, of the Compiled Laws, the value thereof is immaterial, so that the animal is of any value whatever.

Now, then, the question for this court to determine is whether a person tried and convicted under section 93, chapter 6, division 5, of the Compiled Laws, who, being the bailee of a mare, converts her to his own use, with intent to steal, the animal being of a less value than fifty dollars, can be punished as provided under section 78, chapter 6, of the Compiled Laws, which makes the felonious stealing of such animal, of whatever value, grand larceny. The value of the animal alleged to have been converted in this case is stated in the information to be forty dollars. To so hold would require this court to so construe said section 93 to mean that the bailee of any mare, gelding, colt, cow, calf, etc., of whatever value, is guilty of grand larceny, as provided in said section 78. To so hold we must either construe a word into said section 93, such as "nature" or "character," and to hold such words as meaning the same as the words "amount" or "value" of the property converted; or else we would have to hold that said section 93, with the words "according to the amount of money or value of the goods,

chattels, or property so converted," eliminated therefrom, would mean the same as it now reads.   We think such a construction would amount to judicial legislation.   It is for the legislature to enact the laws.   It is the duty of the court to construe them as it finds them.   These statutes are both highly penal; and in such cases the rule of strict construction applies.

In Endlich on the Interpretation of Statutes (§ 329) we find this doctrine declared: "To determine that a case is within the intention of a statute, its language must authorize the court to say so; but it is not admissible to carry the principle that a case which is within the mischief of a statute is within its provisions, so far as to punish a crime not specified in the statute, because it is of equal atrocity or of a kindred character with those which are enumerated.   In this characteristic, the difference between liberal and strict constructions is clearly presented.   Whilst the letter of a remedial statute may be extended to cases clearly within the same reason and within the mischief the act was designed to cure, unless such construction does violence to the language, a consideration of the old law, the mischief, and the remedy, though proper in the construction of criminal as well as other statutes, is not in itself enough to bring a case within the operation of the former class of statutes.   Their language, properly given its full meaning, must, at least by that meaning, expressly include the case; and in ascertaining that meaning the court cannot go beyond the plain meaning of the words and phraseology employed, in search of an intention not certainly implied in them.   In other words, whilst a case may come within the purview of a remedial statute, unless its language, properly construed, excludes it, it is excluded from the reach of a criminal statute, unless the language includes it.   Unless the proper meaning of the language of the statute brings a case within its letter, the rule of strict construction forbids the court to create a crime or penalty by construction, and requires it to avoid the same by construction; and, although the court may be unable to conceive any reason why the case in question should have been omitted, and considers it highly improbable that an omission was intended, it is not at liberty to extend the enactment to cases not included within the clear and obvious import of the language."   And in section 330 the same author

says: "It may be here added that the rule of strict construction, in the case of penal statutes, requires that, where an act contains such an ambiguity as to leave reasonable doubt of its meaning, it is the duty of the court not to inflict the penalty; that, where it admits of two constructions, that which operates in favor of life or liberty is to be preferred."

In *United States* v. *Wiltberger*, 5 Wheat. 76, Marshall, C. J., delivering the opinion of the court, says: "The rule that penal laws are to be construed strictly is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not in the judicial, department. It is the legislature, not the court, which is to define a crime, and ordain its punishment. It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal as well as other statutes. This is true. But this is not a new independent rule, which subverts the old. It is a modification of the ancient maxim, and amounts to this: that, though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity or of kindred character with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would

be unsafe to consider as precedents forming a general rule for other cases."

In *Western Union Tel. Co.* v. *Axtell,* 69 Ind. 199, the court say: "A court cannot create a penalty by construction, but must avoid it by construction, unless it is brought within the letter and necessary meaning of the act creating it." These authorities, and those that might be multiplied, simply but strongly, enunciate the elementary doctrine that penal statutes must be strictly construed.

We are of the opinion that under no construction of which section 93 is susceptible could the respondent have been tried thereunder, on the information alleging the value of the mare converted to be forty dollars, and convicted of grand larceny, and punished therefor as under section 78. If the legislature desire to punish bailees of domestic animals mentioned in section 78, chapter 6, of the Compiled Laws, who convert the same with intent to steal, and treat such conversion as grand larceny, as if the original taking had been felonious, then section 93, chapter 6, division 4, of the Compiled Laws, should be amended by inserting such qualifying words as "nature" or "character" of property, so as to make the offense and punishment the same under both of said sections, as is found to be the case in similar statutes in Missouri and other states. From this view of the case, it is apparent that the lower court had no original jurisdiction to try this cause. The judgment of the lower court is therefore affirmed.

*Affirmed.*

HARWOOD, J., and DE WITT, J., concurred.